**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH BURROUGHS, | Civil Action No. 2:11-cv-1685 (SDW) (MCA) |
| Plaintiff, | |
| v. | |
| CITY OF NEWAK, HERIBERTO FIGUEROA, ADAM SPENCER, and JOHN DOES 1-5 | **OPINION** |
| Defendants. | August 9, 2013 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Newark, Heriberto Figueroa, Adam Spencer, and John Does 1-5's (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1441. Venue is proper pursuant to 28 U.S.C. § 1391(b). This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court **GRANTS** Defendants' motion **in part** and **DENIES** it **in part**.

## I. FACTUAL HISTORY

### a. Pre-Burroughs Arrival

On February 6, 2010, while working undercover as part of a narcotics enforcement team, police officers Heriberto Figueroa and Adam Berger[1] (the "Officers") allegedly witnessed a "black male wearing a black coat and black pants 'attempting to duck down behind a dumpster' in the parking lot of the Laundry Fresh Laundromat" ("Laundromat") on Central Avenue in

---

[1] The caption for this case mistakenly names Adam Berger as Adam Spencer. Defendant's full name is Adam Spencer Berger.

Newark, New Jersey. (*See* Br. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br.") 3; *see also* Certification of Sohail Shahpar, Esq., ("Shahpar Cert."), Ex. G, Incident Report ¶ 8.) The location of the Laundromat and the person's movements made the Officers believe the suspect that they observed was "possibly doing something suspicious." (*See* Certification of Gary S. Lipshutz ("Lipshutz Cert."), Ex. C, Dep. Tr. of Heriberto Figueroa ("Figueroa Dep.") 42:4-15, May 9, 2012.) The Officers contend that the area where the Laundromat is located is a "hotspot for drug activity and crime stemming from [] drug activity." (Lipshutz Cert., Ex. D, Dep. Tr. of Adam Berger ("Berger Dep.") 33:19-25, May 9, 2012.)

After observing what the officers believed to be a suspicious individual, the officers circled around the block and entered the Laundromat parking lot to investigate the scene. (*See* Defs.' Br. 3; *see also* Pl.'s Br. 2-3.) Plaintiff contests whether there was ever anyone "walking behind or standing near the dumpster."[2] (*See* Pl.'s Br. 8; *see also* Pl.'s Facts 2-3.)

   *b. The Arrest*

Plaintiff Joseph Burroughs arrived at the Laundromat at 1:18 PM with his wife and two young children in his Mercedes-Benz. (*See* Pl.'s Br. 2; *see also* Defs.' Br. 2.) Mr. Burroughs is a black male with no prior criminal history. (*See* Pl.'s Br. 1-2.) His wife and two children unloaded the laundry while Mr. Burroughs waited by his car. (*See* Pl.'s Br. 2.) Defendants contend that video surveillance shows Mr. Burroughs walking away from his vehicle and heading over to the sidewalk area "near the dumpster for approximately eight seconds." (*See* Defs.' Facts 7.) Subsequently, Officer Figueroa and Officer Berger pulled into the parking lot and Officer Figueroa allegedly "walked up to [Plaintiff] to conduct a field interview and conduct

---

[2] Defendants assert that there was a man "ben[t] over in the area near the dumpster" for "almost 40 seconds." (*See* Defs.' Br. 4.) Video surveillance from the Laundromat appears to confirm that there was a man in dark attire standing by the dumpster from 1:17:53PM to 1:18:40 PM on the surveillance tape. (*See* Shahpar Cert., Ex. D, Copy of Video 8 (Feb. 6, 2010).)

a *Terry* frisk 'for officer safety.'"  (*See id.* 6.); *Terry v. Ohio*, 392 U.S. 1 (1968).  Mr. Burroughs contends that the Officers did not approach him to conduct a field interview, but instead "bum rushed" him.  (*See* Pl.'s Br. 3; *see also* Pl.'s Facts 3-4.)  Mr. Burroughs also contests whether either officer identified himself after getting out of the car and prior to conducting the *Terry* frisk.  (*See* Defs.' Facts 6; *see also* Pl.'s Facts 3-4.)  Upon seeing the Officers, Mr. Burroughs immediately placed his hands in the air "as if to surrender."  (*See* Defs.' Br. 3, 5; *see also* Pl.'s Br. 6, 8.)

While performing the *Terry* frisk, Officer Figueroa allegedly "felt a large bulge on Burroughs['] left side."  (*See* Defs.' Facts 6.)  Mr. Burroughs admitted to carrying a 40-caliber Glock handgun.  (*See* Defs.' Facts 6; *see also* Pl.'s Facts 4.)  Mr. Burroughs had a legal permit to own the gun, but did not have a permit to carry it.  (*See* Defs.' Facts 6; *see also* Pl.'s Facts 4.)  Mr. Burroughs was then arrested and incarcerated for ten days.[3]  (*See* Defs.' Facts 6; *see also* Pl.'s Facts 4.)  Subsequent to Plaintiff's incarceration, his then attorney, Paul H. Feinberg, Esq., ("Mr. Feinberg") obtained video surveillance footage from the Laundromat and forwarded it to the Essex County Prosecutor's office, which thereafter dismissed the charges against Plaintiff.[4]  (*See* Shahpar Cert. Ex. D, F.)

---

[3] A few days prior to Mr. Burroughs' arrest, the Officers were advised that a shooting had recently occurred "in the area[;]" however, no description of a suspect was given.  (*See* Pl.'s Opp'n to Defs.' Material Statement of Facts ("Pl.'s Facts") 2; Defs.' Statement of Undisputed Material Facts ("Defs.' Facts") 5.)  This knowledge informed the Officers' conduct on the afternoon of February 6, 2010.  (*See* Pl.'s Br. 4; *see also* Defs.' Br. 11.)

[4] Mr. Feinberg maintains that:

> During [his] discussion with the prosecutor, the [p]rosecutor agreed that because the tape clearly showed the [O]fficers did not stop [Plaintiff] for the reasons identified within their report, (suspicious and ducking behind the dumpster), but that the tape proved otherwise, in the prosecutor's opinion the stop would clearly be suppressed as an unlawful stop, and therefore the [p]rosecutor would dismiss the charges against [Plaintiff].

(*See* Shahpar Cert., Ex. F, ¶ 6.)

### c. The Officer's Disciplinary History

Officer Berger has had seven citizen IA[5] complaints against him, one of which was a citizen complaint for excessive force and another for improper search; however, none have been sustained. (*See* Defs.' Facts 12; *see also* Pl.'s Facts 15.) Only one complaint, a departmental complaint for an administrative matter, has been sustained. (*See* Defs.' Facts 12; *see also* Pl.'s Facts 15.)

Officer Figueroa has had twenty-five citizen IA complaints against him, sixteen citizen complaints for excessive force and another for improper search.[6] (*See* Defs.' Facts 12-13; *see also* Pl.'s Facts 15.)

### d. Procedural History

In light of the facts mentioned above, Plaintiff brings eleven causes of action against Defendants: (1) New Jersey Civil Rights Act ("NJCRA"), (2) 42 U.S.C. §§ 1981/1983 – 4th, 5th, and 14th Amendment, (3) §§ 1981/1983 – false arrest, (4) §§ 1981/1983 – false imprisonment, (5) § 1983- malicious prosecution, (6) 42 U.S.C. § 1985 – conspiracy, (7) §§ 1981/1983 – negligent supervision, retention, and training, (8) § 1983 failure to implement appropriate custom practice and policies, (9) §§ 1981/1983 – individual liability of Newark police officers, (10) New Jersey Law Against Discrimination ("NJLAD") – race, and (11) aiding and abetting. (*See generally* Compl.) In his complaint, Plaintiff seeks a "judgment against all Defendants for compensatory damages, emotional distress[,] pain and suffering[,] punitive damages[,] interest, attorneys fees and costs[,] and other such equitable relief." (Compl. 18.) Defendants now seek to dismiss Plaintiff's claims. (*See generally* Defs.' Br.)

---

[5] This Court presumes "IA" to be an abbreviation for "Internal Affairs." (*See* Defs.' Br. 13.)
[6] It is unclear from the record how many citizen IA complaints have been sustained against Officer Figueroa.

## II.    LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact.  *See Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

## III.  DISCUSSION

### a.  *Claims and Standards*

#### i.  NJCRA

The NJCRA provides a private right of action for any person who is injured by any other person who

> (a) . . . whether or not acting under color of law, subjects or causes to be subjected any other person to the deprivation of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States; . . . [or] (b) . . . whether or not acting under color of law, interferes or attempts to interfere by threats, intimidation or coercion with the exercise or enjoyment by any other person of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or law of this State . . . .

N.J. STAT. ANN. § 10:6-2, et seq. (2004).  The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions [sic]."  *Tafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).  To establish a valid claim under the NJCRA, "[a] plaintiff must allege a specific constitutional violation."  *Matthews v. New Jersey Inst. of Tech.*, 717 F. Supp. 2d 447, 452 (D.N.J. 2010) (citing N.J. Stat. Ann §10:6-2(c)).   Accordingly, Plaintiff's first count is subsumed into his § 1983 claims.[7]  *See  Armstrong v. Sherman*, Civ. No. 09–716, 2010 WL 2483911, * 5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983. . . .").

#### ii.  Section 1983 Claims

Section 1983 confers liability on "[e]very person who, under color of any statute . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1996).  "Section 1983 does not create substantive

---

[7] Plaintiff's complaint does not specify which rights he seeks to vindicate under the NJCRA.  Accordingly, this Court cannot reach a decision regarding Plaintiff's NJCRA claim.

rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights." *Junne v. Atl. City Med. Ctr.*, Civ. A. No. 07-5262 (RMB), 2008 WL 343557 at * 4 (D.N.J. Feb. 4, 2008). A plaintiff may seek a § 1983 claim against a defendant for the defendant's conduct in either his official capacity or individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "[T]o recover under [§ 1983], a plaintiff [seeking to establish individual liability] must show . . . : (1) a person deprived [him] or caused [him] to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law." *Junne*, 2008 WL 343557 at * 4. It follows that if the person charged has not acted under color of state law or a plaintiff has not been deprived of a constitutional or statutory right, there can be no § 1983 liability.[8] *See id.*

1. *Count Two – Fourth, Fifth and Fourteenth Amendments*

a. <u>Fourth Amendment</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "Generally . . . warrantless searches and seizures are per se unreasonable under the Fourth Amendment." *U.S. v. Silveus*, 542 F.3d 93, 1000 (3d Cir. 2008) (quoting *U.S. v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005)). One of the exceptions to this rule applies to short investigatory stops, known as *Terry* stops. *See Terry v. Ohio*, 392 U.S. 1 (1968). The parties seem to agree that the proper focus for Plaintiff's Fourth Amendment claim is whether Defendants' *Terry* stop was valid.

---

[8] Count nine of Plaintiff's complaint seeks to hold the Officers individually liable under § 1983 for Plaintiff's injuries. (*See* Compl. 15.) This Court interprets Plaintiff's § 1983 claims concerning the Fourth, Fifth, and Fourteenth Amendment violations, and claims concerning false arrest, false imprisonment, and malicious prosecution to be §1983 claims against the Officers in their individual capacity.

*Terry* stops are proper where a police officer who stops and briefly detains an individual has a reasonable suspicion that said individual is involved in criminal activity. *See Terry*, 392 U.S. at 30. It is important that the stop and detention be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Id.* at 21. Determination of reasonable suspicion is a fact-sensitive inquiry that requires an analysis of the totality of the circumstances. *See Alabama v. White*, 496 U.S. 325, 330 (1990).

### b. Fifth Amendment

The Fifth Amendment states that "no person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A viable Fifth Amendment claim requires the defendants to be federal actors. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

### c. Fourteenth Amendment

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "In order to assert a claim for violation of procedural due process, a plaintiff must allege (1) a protected interest and (2) the State deprived plaintiff of that interest using procedures that were not constitutionally adequate." *Oliver v. Dow*, Civ. No. 10–1542 (DMC-JAD), 2011 WL 601556, at * 8 (D.N.J. Feb. 17, 2011) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "In order to make out a claim of substantive due process, 'a plaintiff must prove that [he] was deprived of a protected property interest by arbitrary or capricious government action.'" *O'Donnel v. Simon*, No. 06-5351 (FSH), 2007 WL 2159596, at * 4 (D.N.J. July 25, 2007) (quoting *Sameric Corp. v. City of Phila.*, 142

F.3d 582, 590 (3d Cir. 1998)).  "To make an equal protection claim in the profiling context, [a plaintiff is] required to prove that the actions of [the officers] (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose."  *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002)(internal citations omitted).

### 2.  *Counts Three and Four – False Arrest and False Imprisonment*

"A claim for false arrest under § 1983 originates from the Fourth Amendment guarantee against unreasonable search and seizures."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir. 1994).  To prevail on a false arrest claim, the plaintiff must show that the arresting officers lacked probable cause to make the arrest.  *Groman*, 47 F.3d at 634; *see also Kokinda v. Breiner*, F.Supp.2d 581, 592 (M.D.Pa.2008) (citations omitted).  New Jersey courts consider false arrest and false imprisonment to be the same tort. *See Price v. Phillips*, 90 N.J.Super. 480, 484 (App. Div.1966).  Nevertheless, "an arrest based on probable cause [cannot] become the source of a claim of false imprisonment."  *Groman*, 47 F.3d at 636 (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)).

### 3.  *Count Five – Malicious Prosecution*

To establish a claim for malicious prosecution pursuant to § 1983 and New Jersey law, Plaintiff must prove that the defendants: "(1) instituted proceedings (2) without probable cause . . . (3) with legal malice; and (4) the proceedings terminated in favor of plaintiff."  *Tribal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001).  The essence of a cause of action for malicious prosecution is probable cause.  *Lind v. Schmid*, 67 N.J. 255, 262 (1975).  While each factor must be proven separately,

"evidence of one may be relevant with respect to another." *Lind*, 67 N.J. at 262. Each element must be proved; the absence of any element is fatal to a plaintiff's claim. *See id.*

*4. Counts Seven and Eight*

Counts seven and eight of Plaintiff's complaint seek to hold the City of Newark liable for the Officers conduct as employees of the City. "A municipality cannot be held liable simply because an employee is a tortfeasor." *Labo v. Borger*, Civ. A. No. 02-3975, 2005 WL 1971867 at * 3 (D.N.J. Aug. 15, 2005). Municipalities may only be held liable in three instances: (1) where they adopt an official policy that deprives citizens of their constitutional rights, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); (2) where they tolerate or adopt an unofficial custom that results in the unlawful stripping of constitutional rights, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003); or (3) where they fail to "train, supervise, or discipline" their employees so as to prevent them from unlawfully depriving citizens of their constitutional rights, *see City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Count seven of the complaint corresponds to the second type of liability, while count eight corresponds to the third type of liability.

a. Count Seven - Negligent Supervision, Retention, and Training

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id* at 388. The deliberate indifference must be attributed to the municipality. (*See id.* at 397)(stating that "municipal liability . . . may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of unconstitutional violations involving the exercise of police discretion.") This rule is consistent with the Supreme Court's "admonition

in *Monell*, that a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation." *Id.* (internal quotation omitted). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* "[F]or liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. Case law instructs that

> "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on [a] city, for the officer's shortcomings may have resulted from factors other than a faulty training program."

*Id.* at 390-91 (internal citations omitted).

Instead, a pattern of tortious conduct by inadequately trained employees can demonstrate "that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury." *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407-08 (1997). Police continuing to adhere to a policy or custom that they know or should know has failed to prevent tortious conduct by its officers is enough to establish evidence of "deliberate indifference." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 407.

To establish a claim of negligent retention and supervision, a plaintiff must present evidence showing that:

> (1) the employer knew or had reason to know of the employee's particular incompetence, unfitness, or dangerous attributes, (2) the risk of harm to others created by these qualities could have been reasonably foreseen by the employer, and (3) the employee's dangerous characteristics or unfitness and the employer's negligence was the proximate cause of the injury.

*McAllister v. Greyhound Lines, Inc.*, No. CIV. A. 96-2225, 1997 WL 642994, at * 4 (D.N.J. Oct.7, 1997).

> b. <u>Count Eight – Failure to Implement Appropriate Custom Practice and Policies</u>

To sustain a § 1983 claim for municipal liability based on a custom or policy a plaintiff must establish (1) the existence of a policy or custom and (2) causation. *See Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990). A municipal policy or custom can be established in two ways. In *Andrews v. City of Philadelphia*, the Third Circuit explained that, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." 895 F.2d 1469, 1480 (3d Cir. 1990). On the other hand, a "custom" is a course of action, though not authorized by law, that is "'so permanent and well settled' as to virtually constitute law." *Id*. A custom can be established in two ways: (1) when practices of state officials, though not authorized by law, are "so permanent and well-settled [that they] virtually constitute law"; or (2) when there is evidence of knowledge or acquiescence of the custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotations omitted) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)); *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)). Regarding causation, a plaintiff can demonstrate the necessary causal link by showing that governmental acquiescence caused the disputed injury. *See Bielevicz*, 915 F.2d at 851.

> iii. <u>Count Six – § 1985(3) Conspiracy Claim</u>

The elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; [] (3) an act in furtherance of the

conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.[9]

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir.2006) (internal quotations and citations omitted).

### iv.  Count 10 – NJLAD

The NJLAD prohibits discrimination against individuals on the basis of "race, creed, color, national origin, ancestry, age, [and] sex," inter alia.  N.J. STAT. ANN. § 10:5-3 (2007).  To establish a NJLAD claim in the context of a deprivation of legal rights by law enforcement, a plaintiff must show that the actions of law enforcement officials "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose."  *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002); *see also Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (1999)(adopting standard set by United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  "In order to demonstrate [that a defendant's actions had a] discriminatory effect, a plaintiff must show that he is a member of a protected class and was treated differently than similarly situated individuals in an unprotected class."  *Rojas v. City of New Brunswick*, Civ. No. 04-3195 (WHW), 2008 WL 2355535 at * 26 (D.N.J. June 4, 2008) (citing *id.*).  A plaintiff must also show "purposeful and systematic discrimination by specifying instances in which [he] was singled out for unlawful oppression in contrast to others similarly situated."  *Pagliuco v. City of Bridgeport*, No. 3:01 CV 836 WIG., 2005 WL 3416131, at * 18 (D. Conn. Dec. 13, 2005).

---

[9] Plaintiff did not specify under which subsection he brings his § 1985 claim; however, this Court interprets his claim to be a subsection §1985(3) claim as it is the only one applicable to Plaintiff's alleged facts.

v. Count 11- Aiding and Abetting

Plaintiff alleges that the City of Newark aided and abetted Defendant officers in their violation of NJLAD. New Jersey has adopted the Restatement (Second) of Torts' definition for "aiding and abetting" liability under NJLAD.[10] *See Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (concluding that the New Jersey Supreme Court would adopt the aiding and abetting standard in the Restatement); *see also Judson v. Peoples Bank and Trust Co.*, 25 N.J. 17, 29 (1957). The Restatement states that, "a person is liable for harm resulting to a third person from the conduct of another when he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." RESTATEMENT (SECOND) OF TORTS § 876(b) (1979); *See Failla*, 146 F.3d at 158. Aiding and abetting "require[s] active and purposeful conduct." See *Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 552 (D.N.J. 2009) (quoting *Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004). The aider and abettor must "'willfully and knowingly' associate himself with another's unlawful act." *See Failla*, 146 F.3d at 158. Shared intent is irrelevant for purposes of establishing liability under NJLAD. *See Failla*, 136 F.3d at 157; *see also Passaic Daily News v. Blair*, 63 N.J. 474, 488-89 (1973).

Therefore, to prove an employer is an aider or abetter in New Jersey, Plaintiff must demonstrate that: "(1) the party whom the defendant [aided,] [performed] a wrongful act that [caused] an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he [provided] the assistance; [and] (3) the defendant must [have] knowingly and substantially [assisted] the principal violation." *Cicchetti v. Morris Cnty. Sheriff's Office,* 194 N.J. 563, 594 (2008).

---

[10] Some New Jersey Superior Courts have offered slightly different definitions for aiding and abetting liability. *See Baliko v. Stecker*, 275 N.J. Super. 182, 191 (N.J. Super. Ct. 1994) (quoting *State v. Newell*, 152 N.J. Super. 460, 469 (NJ. Super. Ct. 1977).

### b. *Analysis*

### i. *Count Two – Fourth, Fifth and Fourteenth Amendment*

### 1. Fourth Amendment

Defendants argue that Plaintiff's § 1983 claims fail because Defendants are entitled to qualified immunity.[11] (*See* Defs.' Br. 19.) "Qualified immunity is an immunity from suit rather than a defense to liability; the benefit of the immunity is effectively lost if the case is allowed to go to trial." *Bayer v. Twp. of Union*, 414 N.J. Super. 238, (App. Div. 2010) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[A] defendant's entitlement to qualified immunity is a question of law to be decided [as] early in the proceedings as possible, preferably on a properly supported motion for summary judgment [.]" *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 387 (2000). "[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials be resolved prior to discovery.'" *J.S. v. Lee*, No.L-783-10, 2011 WL 1344997, at * 3 (N.J. Super. Ct. App. Div. Apr. 11, 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted)). Regarding police officers,

> Police officers are afforded qualified immunity to serve two competing interests. First, police officers need to be free to discharge their duties without fear of defending insubstantial claims. Second, the public has a need to vindicate a violation of their civil rights through a monetary award. This protection exists 'regardless of whether the police officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."'

*Fletcher v. Camden Cnty. Prosecutor's Office*, No. L-8421-05, 2010 WL 4226150, at * 8 (N.J. Super. Ct. App. Div. Oct. 27, 2010) (citations omitted).

---

[11] Defendants' brief suggests that their qualified immunity defense only applies to Plaintiff's Fourth Amendment § 1983 claims as Defendants qualified immunity defense focuses on the Officers *Terry* stop and frisk were lawful. (*See* Defs.' Br. 22-23.)

"A court required to rule upon the qualified immunity issue must consider [] this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*[12] In terms of determining whether a right is clearly established, "[t]he ultimate issue is whether . . . reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful."[13] *Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 178 F.2d 1087, 1092 (3d Cir. 1989).

For the reasons set forth below, this Court does not find that Defendant officers are entitled to qualified immunity as to Plaintiff's Fourth Amendment §1983 claim.

Here, consideration of both *Saucier* factors weigh against a finding that Defendant officers are entitled to qualified immunity. Concerning the first factor, the facts of this case, taken in the light most favorable to Plaintiff, show that Defendant officers violated Plaintiff's Fourth Amendment right against illegal searches and seizures. First, the Officers' inconsistencies in recounting what they observed before entering the Laundromat parking lot demonstrates the lack of reasonable and articulable suspicion that criminal activity was in progress. In their police report, the Officers stated that the suspect, believed to be Plaintiff, was acting suspiciously because he was attempting to duck behind a dumpster. (*See* Lipshutz Cert. Ex. A, Incident Report ¶ 3.) However, Defendant officers testified during depositions that the

---

[12] It should be noted that the Court in *Pearson v. Callahan*, 555 U.S. 223 (2009), ruled that the sequence of the two prongs, violation and "clearly established," is not mandatory as stated in *Saucier*. Rather, courts should use the sequence which requires a smaller "expenditure of scarce judicial resources." *Pearson*, 555 U.S. at 236.

[13] "[I]f the official pleading the [qualified immunity] defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

suspect's conduct was suspicious simply because he was standing near a dumpster. (*See* Lipshutz Cert. Ex. C, Figueroa Dep. 47-48, May 9, 2012.) Furthermore, according to Plaintiff's allegations, the Officers did not conduct a field interview when they stopped Plaintiff, but instead "rushed" him and began frisking him without identifying themselves as police officers. (*See* Pl.'s Facts 3.) Plaintiff also notes that when the Officers approached him he immediately placed his hands in the air in a compliant position, negating any negative implications as to the Officers' safety. While it is important to note that the area where the Laundromat is located is purportedly a violent area with drug activity, and that a shooting had occurred days before Plaintiff's arrest, it is unclear whether the Officers followed the mandated progression of criminal investigation by first identifying themselves and questioning Plaintiff before commencing to search him. Taken in the light most favorable to Plaintiff, a reasonable juror could find that the Officers' *Terry* stop and frisk were improper.

Concerning the second Saucier factor, the Supreme Court has held that an officer may conduct "a reasonable search for weapons for [his] protection . . ., where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual." *Terry*, 392 U.S. at 27. Here, given the clear contours of Plaintiff's Fourth Amendment rights, a reasonable police officer would understand that searching a criminal suspect for weapons without a reasonable belief that the officer is dealing with an armed and dangerous suspect, i.e. the suspect's hands are raised in an act of submission, violates the suspect's Fourth Amendment rights. Therefore, Defendants are not entitled to qualified immunity for Plaintiff's Fourth Amendment § 1983 claim.[14]

---

[14] Plaintiff's attempt to couch his § 1983 claims as simultaneous § 1981 claims is misplaced as §1981 claims prohibit "racial discrimination in the making and enforcement of contract and property transactions." *Campbell v. Gibb*, Civ. No. 10-6584 (JBS), 2012 WL 603204 at * 11 (D.N.J. Feb. 21, 2012.)

2. Fifth and Fourteenth Amendment

Plaintiff's Fifth Amendment and Fourteenth Amendment claims cannot stand.

Fifth Amendment claims requires involvement of a federal actor, which is not the case here.

Regarding Plaintiff's Fourteenth Amendment claim, Plaintiff did not specify in his complaint

which Fourteenth Amendment protection he intends to seek.  Furthermore, Plaintiff has not

pursued his Fourteenth Amendment claim in his brief.  Accordingly, this Court cannot make a

determination regarding Plaintiff's Fourteenth Amendment claim.

ii.  *Counts Three and Four – False Arrest and False Imprisonment*

With respect to Plaintiff's false arrest and false imprisonment claims, this Court grants

Defendants motion for summary judgment for the reasons stated in the malicious prosecution

analysis, *infra* (III)(b)(i)(3).

iii.  *Count Five – Malicious Prosecution*

The first prong of a malicious prosecution claim requires the initiation of a

criminal proceeding against Plaintiff.  Here, Officer Berger plainly initiated a criminal

proceeding against Plaintiff as he was the complainant of the arrest identified in the

criminal complaint.  (*See* Shahpar Cert., Ex. K, Criminal Complaint ¶ 12.)

Prong two requires a showing that Defendants did not have probable cause to

move forward with the proceedings.  Plaintiff was charged with the possession of a

loaded .40 caliber handgun without a permit to carry, in violation of New Jersey Statute

Annotated, Title 2C:39-5(b): Unlawful Possession of Weapons.  (*See* Shahpar Cert., Ex.

K, Criminal Complaint ¶ 12.)  The Officers argue that Plaintiff's admission that he was

carrying a weapon unlawfully, while the *Terry* search was being conducted, is dispositive

as to a finding of probable cause.  (*See* Defs.' Br. 26.)  Contrarily, Plaintiff argues that

since the *Terry* search was conducted illegally, "the exclusionary rule should apply and . . . the eventual seizure of the gun [] should be excluded from the probable cause analysis." (*See* Pl.'s Br. 24.)  Plaintiff's argument lacks merit.

The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 347 (F.2d 1999).  The Supreme Court has declined to extend the rule to cases in the non-criminal context.  *See U.S. v. Janis*, 428 U.S. 433, 447-48, n.17 (1976).  The "exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by exclusion." *Id.*  Correspondingly, the Third Circuit has held that "[v]ictims of unreasonable searches and seizures may recover damages directly related to the invasion of their privacy, but such victims may not be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir.2000).  This idea manifests from the reasnoning that "the evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir.1999).

Here, Defendant officers may have conducted an unreasonable search and seizure, which led to the discovery of Plaintiff's handgun.  Though, Plaintiff argues the discovery was unlawful, Plaintiff was indeed committing a crime, thus giving Defendant officers ample probable cause to initiate a criminal proceeding against him.  Accordingly,

Plaintiff's argument is unavailing. Plaintiff's failure to satisfy the second prong of his malicious prosecution claim renders examination of the last two elements unnecessary.

### iv. *Count Seven – Negligent Supervision, Retention and Training*

Here, regarding the claim for failure to train, Plaintiff has not presented enough evidence to demonstrate that a genuine dispute of a material fact exists as to the City's failure to properly train its officers generally, and Defendant officers specifically. Plaintiff points out that both Defendant officers had multiple Internal Affairs grievances filed against them. Officer Berger had seven citizen IA complaints filed against him, none of which have been sustained. Also, Officer Figueroa has had twenty-five IA complaints against him. While the fact that the Officers have had multiple citizen IA complaints filed against them is noteworthy, this evidence alone does not permit an inference of deliberate indifference on behalf of the City. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)(stating that liability for failure to train/supervise exists "where there is a history of wide-spread abuse.")

Regarding Plaintiff's negligent retention and supervision claim, Plaintiff has provided sufficient evidence to show that a genuine dispute of material fact exists. Concerning the first element of a negligent retention claim, Plaintiff presents evidence showing that the City did not originally hire Officer Figueroa because he was psychologically unfit to effectively perform the duties of an officer. (See Pl.'s Br. 35 (citing Lipshutz Cert. Ex. C at 21:1-9).) Concerning the second element, Plaintiff argues that as a result of the City's knowledge of Officer Figueroa's incompetency, the risk of harm to others by Officer Figueroa could have been reasonably foreseen by the City. (*See id.* at 36.) Concerning the last element, Plaintiff argues that the City's negligence and Officer Figueroa's incompetency were the proximate causes of Plaintiff's injuries. (*See id.*)

v. *Count Eight –Failure to Implement Appropriate Custom, Practice, and Policies*

Here, Plaintiff has again failed to present enough evidence to demonstrate that a genuine dispute of a material fact exists regarding the City's implementation of a custom that violates § 1983. Plaintiff argues that the "City's failure to effectively investigate and discipline misconduct by police officers constituted tacit approval of such conduct." (Pl.'s Br. 28.) As evidence of this custom, Plaintiff argues that the low rate of sustaining IA complaints concerning improper searches is evidence of governmental acquiescence of failing to investigate and discipline police misconduct. (*See id.* 30.) Plaintiff's argument fails because "statistical evidence alone may not justify a jury's finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." *Merman v. City of Camden*, 824 F.Supp.2d 581, 591 (D.N.J. 2010)(internal citation omitted). "Rather than reciting a number of complaints or offenses, a Plaintiff must show why those prior incidents deserved discipline and how the misconduct in those situations was similar to the present one." *Brown v. New Hanover Twp. Police Dep't*, Civ.A. No. 07—2776, 2008 WL 4306760, at * 15 (E.D.Pa. Sept. 22, 2008).

Plaintiff also argues that governmental acquiescence is evident through the City's failure to discipline the Officers for their alleged race-based suspicion of Plaintiff; however, this argument only demonstrates an isolated incident of possible wrongdoing. Last, Plaintiff argues that the City's failure to investigate the reason for the prosecutor's decision to drop criminal charges against him in compliance with the New Jersey Attorney General guidelines is evidence of governmental acquiescence. (*See* Pl.'s Br. 31.) Again, Plaintiff's argument fails because it pertains to only one alleged incident. Plaintiff's failure to show governmental acquiescence of a custom makes it unnecessary for this Court to explore the causation element of Plaintiff's claim. Accordingly, Defendants are entitled to judgment as a matter of law on count eight.

### vi.   Count Six - § 1985(3) Claim

The cornerstone of a § 1985(3) claim is the existence of a conspiracy. "The conspiracy element of § 1985(3) requires a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon [plaintiff] and an overt act that results in that damage." *Russo v. Voorhees Twp.*, 403 F.Supp.2d 352, 359 (D.N.J.2005) (quotations omitted).

Here, Plaintiff has not produced any evidence to demonstrate that there was an agreement between Officers Figueroa and Berger. Therefore, Plaintiff's § 1985(3) claim cannot survive Defendants' summary judgment motion.

### vii.   Count Ten – NJLAD Claim

In bringing a NJLAD claim, the "focal issue is whether defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of [his] protected status." *Turner v. Wong*, 363 N.J. Super. 186, 213 (App. Div. 2003). New Jersey case law has established that a municipal police department and its officers may be considered a "place of public accommodation" in the context of a NJLAD claim. *See Ptaszynski v. Uwaneme*, 37 N.J. Super. 333, 353 (App. Div. 2004).

Here, Plaintiff highlights several facts to argue that he was approached and arrested based on his race; however, racial discrimination pertaining to one's use of a public accommodation is not enough. Plaintiff has not provided any evidence of discriminatory effect and discriminatory purpose. Furthermore, Plaintiff has not provided evidence of "purposeful and systematic discrimination." *See Pagliuco*, 2005 WL 3416131 at * 26. Accordingly, Plaintiff's NJLAD claim is unavailing.[15]

---

[15] Plaintiff's aiding and abetting claim, which is based on his NJLAD claim, is likewise dismissed.

## IV.   CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendants' motion as to **count two** (Fifth and Fourteenth Amendment claims)**, t**hree, four, five, six, seven (negligent training claim), eight, nine, ten and eleven of Plaintiff's Complaint **and DENIES** Defendants' motion as to counts two (Fourth Amendment claim), seven (as to negligent retention and supervision claim) of Plaintiff's Complaint.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties